IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EVEREST INDEMNITY  | § | |
| INSURANCE COMPANY | § | |
|  | § | |
| v. | § | CIVIL NO. 4:08-CV-678-Y |
|  | § | |
| ALLIED INTERNATIONAL | § | |
| EMERGENCY LLC, ET AL. | § | |

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Plaintiff Everest Indemnity Insurance Company ("Everest")'s Motion for Summary Judgement (doc. #19). Everest seeks a declaratory judgment that its does not owe Allied International Emergency, LLC ("Allied), or its managing members, Mel Hammit and Ty McKee, a duty defend in a suit, *USF Equipment and Services, LTD v. Allied International Emergency, LLC*; No. 2-07CV-490, pending in the United States District Court for the Eastern District of Texas ("the Underlying Suit"). After review, the Court concludes that the allegations in the Underlying Suit are not covered under the insurance policy issued by Everest to Allied. As a result, Everest's motion will be granted.

I. Background

Everest issued a commercial general-liability insurance policy, CGL No. 4000006426-071 ("the Policy"), to Allied for the period of January 26, 2007, to January 26, 2008. (Pl.s' App. at 3-66.) In the Underlying Suit, Allied, Hammit, and McKee (collectively "Defendants") have been sued for patent infringement. The plaintiffs in the Underlying Suit allege that Defendants

infringed U.S. Patent No. 7,104,336 B2 ("the '336 patent") entitled "Method for Fighting Fire in Confined Areas Using Nitrogen Expanded Foam." (Pl.'s App. at 70.)  According to the complaint in the Underlying Suit, in July or August of 2007 Defendants implemented, or provided to a third party, nitrogen-foam firefighting equipment to suppress a coal-mine fire near Oakwood, Virginia.  (*Id.* at 71.)  The plaintiffs in the Underlying Suit allege that defendants Hammit and McKee, as managing members of Allied, "intentionally and personally directed or knowingly caused others" to infringe the '336 patent."  (*Id.*)

The Policy provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (*Id.* at 19.)  The Policy "applies to 'personal and advertising injury' caused by an offense arising out of [the] business [of the insured]." (*Id.*)  "Personal and advertising injury" is defined as "injury, including consequential 'bodily injury,' arising out of one or more" enumerated "offenses." (*Id.* at 26.) Among the listed offenses are "[t]he use of another's advertising idea in [the insured's] advertisement" or "infringing upon another's copyright, trade dress or slogan in [the insured's advertisement]." (*Id.*) Everest argues that neither these, nor any other of the listed offenses, have been pleaded in the Underlying Suit.

II.  Discussion

A.   Objections to Evidence

In support of its motion for summary judgment, Everest has submitted, inter alia, an affidavit of H. Linette Ranieri and a copy of the Policy.  Allied objects to both as hearsay.

In her affidavit, Ranieri states that she is aware of the demand for coverage made by Defendants in connection to the Underlying Suit.  Ranieri also swears that the copies submitted by Everest of the Policy and the complaint in the Underlying Suit are true and correct.  Such statements, which merely recount matters within the affiant's personal knowledge and do not include an assertion made by another or made within a document are not hearsay.  *See* FED. R. EVID. 801(a), (b) & (c) (defining hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted, and a statement as an oral, written, or nonverbal assertion by a person); *also cf. Diamond Offshore Co. V. A & B Builders*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (district court did not err in considering the affidavit of an insurance company's director of claims in which the director claimed that he had personal knowledge of relevant facts and reviewed relevant documents).

Defendants' objections to the copy of the Policy submitted by Everest are equally meritless.  As to Defendants' objection that the Policy is hearsay, it is well settled that a contract is a "verbal act," rather than an assertion, with "legal

3

significance . . . independent of the truth of any statement contained in it." *Kepner-Tregoe, Inc. v. Leadership Software*, 12 F.3d 527, 540 (5th Cir. 1994). A contract is not hearsay and, consequently, need only be authenticated in order to be admissible. *Id.* Ranieri's affidavit, which attests that the copy of the Policy submitted is true and correct, is sufficient authentication. *See* FED. R. EVID. 901(a) (authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims"); *U.S. v. Sutherland,* 656 F.2d 1181, 1201 (5th Cir. 1981) (noting the minimal burden for authentication). And, contrary to Defendants' argument, a court may consider a copy of a document that has been sworn to, as well as certified copies, in ruling on a summary-judgment motion. *See* FED. R. CIV. P. 56(e)(1) (allowing use of "a sworn *or* certified copy" of a document). Defendants' objections are overruled.

B. Legal Standards

1. Declaratory-Judgment Standard

Under 28 U.S.C. § 2201, a party may bring an action in federal court seeking a declaration of his "rights and other legal relations." *See* 28 U.S.C. § 2201. However, § 2201 "confers discretion on the courts [to grant declaratory relief] rather than an absolute right on a litigant [to such relief]." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). To determine the propriety of a declaratory-judgment action, a court must perform a three-part

4

inquiry. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

First, federal jurisdiction over a justiciable controversy between the parties to the action must be established. *Id.; see TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999) (stating § 2201 permits relief "only when other bases for jurisdiction are present"). A controversy is justiciable if an actual controversy exists between the parties to the action. *Wolfe*, 212 F.3d at 895. A controversy is not justiciable when the dispute is "hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)).

Second, a court must evaluate whether it has "authority" to grant declaratory relief. *Wolfe*, 212 F.3d at 895. A district court is not authorized to grant declaratory relief when "(1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involves the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. §] 2283." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 n.1 (5th Cir. 2003).

Finally, a court must "determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action."

*Wolfe*, 212 F.3d at 895. Under this final step a court evaluates whether it should abstain from deciding a declaratory-judgment action in deference to other proceeding which may resolve the controversy. *See Sherwin-Williams Co.*, 343 F.3d at 389-390 (discussing the abstention doctrine announced in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) and the factors established in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)).

       2.   Summary-Judgment Standard

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo County.*, 246 F.3d 481, 489 (5th Cir. 2001). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.*; *Newell v. Oxford Mgmt.*

*Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). When the movant has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to

the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

### 3. Texas Insurance Law

Under Texas law, the duty to defend and the duty to indemnify are separate duties. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Thus, an insurer may have a duty to defend but ultimately be found to owe no duty of indemnification. *See id.* Even so, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. County Mut. Ins. Co.*, 955 S.W.2d at 84.

As to the duty to defend, the insured bears the initial burden of establishing that his claim is covered. *See Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008). In determining whether a claim is covered, and thus a duty to defend owed, Texas follows the "eight-corners" rule. *Id.* That is, in determining whether a duty to defend exists, courts are generally constrained to comparing the four corners of the policy to the four corners of the pleadings in the liability suit against the insured.

*See id.*; *see also GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). This determination is made without regard to the truth of the allegations in the underlying pleadings. *See Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2000). Doubtful cases are resolved in favor of the insured. *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 448 (5th Cir. 2007).

C. Analysis

1. Propriety of Declaratory Judgment

First, Everest must establish that its declaratory-judgment action invokes federal jurisdiction over a justiciable controversy. *See Orix Credit Alliance, Inc.*, 212 F.3d at 895; *Ysleta Del Sur Pueblo*, 181 F.3d at 681. In its complaint, Everest properly alleges diversity jurisdiction under 28 U.S.C. § 1332(a). And a justiciable controversy exists between the parties because Defendants, as Everest's insureds, have been sued and now seek to have Everest provide a defense in the Underlying Suit. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (justiciable controversy exists when insurer seeks declaratory judgment on duties to defend and indemnify and insured has been sued).

Second, a court must evaluate whether it has "authority" to grant declaratory relief. *Wolfe,* 212 F.3d at 895. Because the Underlying suit is pending in a federal district court, rather than a state court, these considerations are not implicated. *See*

*Sherwin-Williams Co.*, 343 F.3d at 388 n.1 (noting the "authority" analysis turns on the pendency of related state-court proceeding and the prohibition on enjoining state proceedings under 28 U.S.C. § 2283).

Finally, a court must "determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Wolfe,* 212 F.3d at 895. The availability of another adequate remedy, including previously filed and currently pending judicial proceedings, does not preclude declaratory relief. *See* FED. R. CIV. P. 57; *cf. Tex. Employers' Ass'n v. Jackson*, 820 F.2d 1406, 1421 (5th Cir. 1987) ("While it is true that the pendancy [sic] of a state court proceeding is a proper basis for a federal court to decline to issue a declaratory judgment, neither statutory nor case law mandates such refusal.") (citation omitted). Even so, as the United States Court of Appeals for the Fifth Circuit has explained:

> [T]he principle of comity requires federal district courts--courts of coordinate jurisdiction and equal rank --to exercise care to avoid interference with each other's affairs. As between federal district courts, . . . the general principle is to avoid duplicative litigation. The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. To avoid these ills, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court. In particular, [a] court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.

*West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721,

728-29 (5th Cir. 1985) (citations omitted) (quotations omitted) (alterations in original).

Defendants have not argued against the Court's exercising its discretion to rule on Everest's declaratory-judgment action. And a ruling on Everest's motion will not interfere with the Eastern District's authority over the Underlying Suit. *Cf. Save Power v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (noting general rule that court where suit is first filed should decide whether "cases involving substantially similar issues should proceed").

Moreover, a ruling on Everest's motion will not dispose of issues presently before the Eastern District. *See Atlantic Mut. Fire Ins. Co. v. Cook,* 619 F.2d 553, 555 (5th Cir. 1980) (noting the usefulness of declaratory-judgment actions in resolving an insurer's duties separately from the suit against the insured); *cf. Agora Syndicate v. Robinson Janitorial Specialists*, 149 F.3d 371, 373-74 (5th Cir. 1998) (district court abused its discretion in dismissing insurer's declaratory-judgment action in favor of suit pending on insured's liability to third party because the parties and issues in the two suits were not the same). Defendant's liability for patent infringement is currently being litigated. But, it appears that Everest's duties to defend and indemnify have not been raised. Thus, principles of comity and efficiency do not counsel against this Court's ruling on Everest's motion. To the contrary, Everest's motion for summary judgment has been fully

11

briefed by both sides and the Court has familiarized itself with the case and the issues. Under such circumstances, courts within this circuit often entertain declaratory-judgment actions regarding an insurer's duty to defend. *E.g., Admiral Ins. Co. v. Little Big Inch Pipeline Co.*, 496 F. Supp. 2d 787 (W.D. Tex. 2007) (denying motion to abate declaratory-judgment action by insurer on duty to defend in favor of underlying state-court proceedings); *see also Wilton and St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994) (listing factors to be considered when determining whether to entertain a declaratory-judgment action where related state-court action is pending, including whether all issues may be resolved in state suit, judicial economy, indication of forum shopping, and convenience of parties).

2. Duty to Defend

Everest advances three arguments in favor of summary judgment. Everest argues that the Underlying Suit is not covered under the Policy's provisions for infringement upon another's copyright, trade dress, or slogan. Defendants do not argue that coverage exists under these provisions in their response. Thus, any argument by Defendants to that effect is waived. *See Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) (concluding failure to brief an argument before the district court waives that argument as analogue to decisions by the United States Court of Appeals for the Fifth Circuit that such failure waives the

argument on appeal) (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002)).

Everest also argues that the allegations in the Underlying Suit are not covered under the Policy's personal- and advertising-injury provisions. Defendants counter that coverage is broad under these provisions, noting that, by its terms, the policy applies to "an offense arising out of [Allied's] business." (Pl.'s App. at 26.) Defendants insist that this provision establishes that the covered offense need not arise out of the insured's advertising. Instead, Defendants posit, to trigger the policy's coverage it must be alleged that the insured used another's advertising idea in an advertisement that arises out of the insured's business.

Defendants' argument rests upon a contrived reading of the contract. Defendants insist that they need not show a causal link between the injury alleged in the Underlying Suit and a personal-and-advertising injury because of the Policy's use of the phrase "arising out of." Rather, according to Defendants, the Policy extends coverage to an enumerated offense "originating from" any aspect of its business operations, not just its advertisements. (Def.s' Br. at 5 (citing *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 225 (5th Cir. 2000).)

But the Policy does require a causal relationship between the insured's offense and the injury alleged in a suit against the insured. The very provision that uses the phrase "arising out of" limits coverage to a "'personal and advertising injury' *caused* by

13

an offense arising out of [the] business [of the insured]." (*Id.* (emphasis added).)  And under Texas law, in the insurance context the phrase "arising out of" requires proof of "but-for causation." *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004).  The complaint from the Underlying Suit does not allege a causal connection between the alleged infringement of the '336 patent and any advertisement by Defendants.  This alone is sufficient to remove the complaint in the Underlying Suit from the Policy's coverage. *Cf. Hyman v. Nationwide Mut. Ins. Co.*, 304 F.3d 1179, 1191 (11th Cir. 2002)(stating, in interpreting a policy with similar language to that at issue here, that "the injury for which coverage is sought must be caused by the advertising").

Furthermore, despite the "arising out of" language on which Defendants focus, the Policy limits coverage to liability incurred by the insured for injuries caused by its advertisements.  The Policy covers only enumerated "offenses" arising out of Allied's business.  (Pl.'s App. at 26.)  The offense upon which Defendants rely provides coverage for liability incurred for "[t]he use of another's advertisement idea in [Allied's] *advertisement*." (*Id.* (emphasis added).)

Defendants insist that the word advertisement, as used in the Policy, means "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business." (Def.s' Br. at 9 (citing BLACK'S LAW DICTIONARY, 50 (5th Ed. 1979).)  Defendants further argue that such a statement, even

14

if made to only one customer, is an advertisement within the meaning of the Policy. But the Policy provides a definition of advertisement: "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Pl.'s App. at 24.) Thus, the Policy requires broadcast or publication to more than one potential customer.

Additionally, the Underlying Suit does not allege that Defendants made use of another's advertising idea. Defendants argue because Congress has expanded the Patent Act to encompass "offers to sell," 35 U.S.C. § 271(a), a generic allegation of patent infringement could constitute an advertisement. And if the infringement at issue involves a method patent, the act of infringement may be seen as the infringer holding out or, "passing off," the method as its own. This, according to Defendants, would constitute a use of advertising ideas. Again, Defendants' arguments are strained.

For this proposition, Defendants rely on *JollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304 (Fed. Cir. 1999) and *Everett Assoc. v. Transcontinental Insurance, Co.*, 57 F. Supp. 2d 874 (N.D. Cal. 1999). *JollyAnne Corp.* simply does not stand for the proposition that a generic allegation of patent infringement constitutes advertising activity under the Patent Act's "offer to sell" language. *See JollyAnne Corp.*, 199 F.3d at 1309 n.6 (discussing whether an offer to donate or a plan to advertise amounts to an

15

offer to sell).

Defendants' reliance on *Everett Associates* is more exasperating. This case has been reversed and, in fact, reversed on the specific point of law for which Defendants cite it. *Everett Assocs. v. Transcon. Ins. Co.*, 35 Fed. Appx. 450, 452 (9 th Cir. Apr. 10, 2002) ("We reject Everett's contention that the 1996 amendment to the statutory definition of patent infringement created a potential for coverage.").

Defendants also argue that the Underlying Suit alleges that Allied "passed off" the nitrogen-foam firefighting equipment as its own and that "passing off" constitutes use of an advertising idea. Although the phrase "advertising idea" is not defined in the Policy, Defendants' argument is an attempt to complicate the obvious. The phrase "advertising idea" means an idea related to advertising; that is, "[a]n 'advertising idea' [is an] idea or concept related to the promotion of a product to the public." *Hyman*, 304 F.3d at 1188. And, of course, the advertisement of a thing is separate from the thing advertised. *See id.* at 1191 ("Simply selling an infringing product is not sufficient to satisfy the causal connection requirement. Rather, the infringement must be committed in an advertisement rather than in the sale of a product in order to be covered [under an advertising-idea provision].") (internal citations and quotations omitted); *see also Applied Bolting Tech. Prods. v. U.S. Fid. & Guar. & Guar. Co.*, 942 F. Supp. 1029, 1033-34 (E.D. Pa. 1996) (rejecting argument that policy's

coverage for misuse of "advertising ideas" extended to suit alleging infringement of a patent covering the thing advertised). All that the Underlying Suit alleges is infringement of the '336 patent, not the manner in which it has been advertised.

In light of the foregoing, the Court concludes that Defendants, who bear the burden of proof regarding coverage, have produced no evidence that the allegations in the Underlying Suit are covered by the Policy.  Consequently, the Court will grant summary judgment in favor of Everest on its duty to defend Defendants in the Underlying Suit.

Finally, Everest argues that, even assuming the allegations from the Underlying Suit are covered by the personal- and advertising-injury provisions, the allegations are excluded under the knowing-violation exclusion.  Having concluded that Defendants cannot establish coverage in the first instance, there is no need to address Everest's arguments regarding the exclusion.

### 3.   Duty to Indemnify

The foregoing analysis establishes that the allegations in the Underlying Suit are not covered by the Policy.  Thus, the Court will grant Everest's motion for summary judgment on the issue of its duty to indemnify Defendants as well. *See Columbia Cas. Co. v. Ga. & Fla. Railnet Inc.*, 542 F.3d 103, 111 (5th Cir. 2008) ("[W]here it is apparent before liability is resolved in the underlying case that the policy cannot cover the claim, the

17

question of indemnity may be determined.").

III. Conclusion

The Court concludes Everest has no duty to defend Defendants in the Underlying Suit.  The Court further concludes that Everest has no duty to indemnify Defendants for any liability they incur in the Underlying Suit.  Accordingly, Everest's motion for summary judgment is GRANTED.

SIGNED: July 14, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/jar